TYLESHA L. MASON AND FERNANDEZ MASON, BY AND THROUGH LISA CANNON, AS THEIR NEXT FRIEND, ET AL., APPELLEES, V. STATE OF NEBRASKA ET AL., APPELLANTS.

672 N.W.2d 28

Filed December 5, 2003. No. S-01-1265.

Don Stenberg, Attorney General, Royce N. Harper, and Michael J. Rumbaugh, Special Assistant Attorney General, for appellants.

Rebecca L. Gould and D. Milo Mumgaard, of Nebraska Appleseed Center for Law in the Public Interest Welfare Due Process Project, Martha F. Davis and Geoffrey A. Boehm, of NOW Legal Defense and Education Fund, Sue Ellen Wall, and Susan A. Koenig for appellees.

Lenora M. Lapidus, Emily J. Martin, and Amy A. Miller, for amici curiae American Civil Liberties Union Foundation Women's Rights Project and American Civil Liberties Union Foundation of Nebraska.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Nebraska's Welfare Reform Act (Act), Neb. Rev. Stat. § 68-1708 et seq. (Reissue 1996 & Cum. Supp. 2002), generally requires that while receiving cash assistance benefits, recipient

families in which at least one adult has the capacity to work must participate in a "self-sufficiency contract," which sets forth certain approved work-related activities in which recipients must engage. See *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). When no adult in the family has the capacity to work, however, no self-sufficiency contract is required. See 468 Neb. Admin. Code, ch. 2, § 020.01(3)(b) (2002).

The Act also contains a "family cap," which generally operates to prevent cash assistance benefits from increasing because a child is born into a recipient family more than 10 months after the family accepts cash assistance. See § 68-1724(2)(b); 468 Neb. Admin. Code, ch. 2, § 007.01 (2001). The issue presented in this appeal is whether the Legislature intended the family cap to apply when there is no adult in the family with the capacity to work.

## BACKGROUND

The underlying facts of this case are essentially undisputed. The plaintiffs are children from families that are headed by single mothers and have received cash assistance payments from the aid to dependent children (ADC) program. See Neb. Rev. Stat. § 43-501 et seq. (Reissue 1998 & Cum. Supp. 2002). See, generally, *King v. Smith*, 392 U.S. 309, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968); *Knowlton v. Harvey*, 249 Neb. 693, 545 N.W.2d 434 (1996) (describing ADC). The defendants are the State of Nebraska, the Department of Health and Human Services, and the department's director (collectively the Department). None of the families participate in a self-sufficiency contract, and the Department does not dispute that each plaintiff's mother is disabled and has no capacity to work within the meaning of the Act. The plaintiffs were each born more than 10 months after their mothers began receiving ADC benefits. Each family was informed by the Department that, due to the family cap, the family's cash assistance payments would not be increased because of the additional child.

The plaintiffs filed a class action in the district court, seeking injunctive and declaratory relief based on their claim that the family cap does not apply to families without a self-sufficiency contract. (The Department's appeal presents no argument with respect to class certification or the plaintiffs' choice to collaterally

attack the Department's denial of increased ADC benefits.) The court determined that the family cap did not apply to families without a self-sufficiency contract and enjoined the Department from enforcing the family cap under those circumstances. The Department appeals.

## ASSIGNMENTS OF ERROR

The Department assigns, as consolidated and restated, that the court erred in (1) holding that the family cap does not apply to the plaintiffs' class and (2) not finding that the plaintiffs' interpretation of the family cap would result in unconstitutional discrimination.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *State ex rel. City of Alma v. Furnas Cty. Farms,* 266 Neb. 558, 667 N.W.2d 512 (2003).

## ANALYSIS

Before addressing the precise issue of statutory interpretation that is presented by this appeal, it is necessary to examine, in more detail, the statutory framework of the Act. The intent of the Act was, in part, to reform the welfare system to remove disincentives to employment, promote economic self-sufficiency, and provide individuals and families with the support needed to move from public assistance to economic self-sufficiency. See, § 68-1709; *Kosmicki v. State,* 264 Neb. 887, 652 N.W.2d 883 (2002). The Act was intended to change public assistance from entitlements to temporary, "contract-based" support, accomplished through individualized assessments of the personal and economic resources of the applicant and the use of individualized self-sufficiency contracts. See, § 68-1709; *Kosmicki, supra.* To that end, the Act limits most recipients of public assistance to no more than 2 years of cash assistance and generally requires that while receiving cash assistance benefits, recipients engage in certain approved work-related activities. See *Kosmicki, supra.* These work-related activities are provided through the "Employment First" program. See 468 Neb. Admin. Code, ch. 2, § 020 (2002).

When an individual or family applies for public assistance benefits, a comprehensive assessment of the applicant's personal and financial assets is conducted by the Department. Based on the results of the assessment, the applicant and Department case manager may develop a self-sufficiency contract detailing the responsibilities, roles, and expectations of the applicant family, the case manager, and other service providers. See, §§ 68-1719 and 68-1720; *Kosmicki, supra.* Cash assistance is then provided only while recipients are actively engaged in the specific Employment First activities outlined in the self-sufficiency contract. See, § 68-1723; *Kosmicki, supra.*

However, those who are found to be incapacitated, and unable to engage in employment or training, are not required to participate in the self-sufficiency contract. See § 020.01(3)(b). Instead, these individuals and families are placed in the "non-time limited benefit group." See *id.* Non-time-limited assistance is intended for families for whom full self-sufficiency is not possible, because of the mental, emotional, or physical conditions of the adult members included in the family unit. See 468 Neb. Admin. Code, ch. 2, § 020.09A (2002). Families on non-time-limited assistance are, as the term suggests, not subject to the time limits of the Act. *Id.* Each plaintiff's family has been placed, due to disability, in the non-time-limited benefit group.

The Act provides that for families receiving cash assistance benefits, the "payment standard shall be based upon family size." § 68-1724(2)(b). The family cap provision specifically states, as relevant, that "[a]ny child born into the recipient family after the initial ten months of participation in the program shall not increase the cash assistance payment . . . ." *Id.* The Department has interpreted the phrase "participation in the program" to refer to the receipt of cash assistance benefits such as ADC. Thus, the Department has promulgated regulations which apply the family cap to families who receive benefits pursuant to a non-time-limited agreement. See § 007.01. Pursuant to § 007.01, the Department refused to provide additional benefits to the plaintiffs' families when their births increased the size of their families.

The plaintiffs argue, on the other hand, that the phrase "participation in the program" refers not to the receipt of benefits, but to a self-sufficiency contract. Thus, the plaintiffs contend that the

family cap created by § 68-1724(2)(b) does not apply to families in the non-time-limited benefit group and that the Department exceeded its statutory authority when it adopted regulations that prevented the plaintiffs' cash assistance benefits from increasing when their families grew. The parties' disagreement over the meaning of § 68-1724(2)(b) is the issue now before this court. The Department argues that the district court erred in rejecting the Department's interpretation of the statute.

It is not clear, from the language of the Act, in which "program" a recipient must be participating for the family cap to apply pursuant to § 68-1724(2)(b). The language of the family cap can be read to refer to the ADC program, but can also be read to refer to a self-sufficiency contract. Consequently, we look to the purposes of the Act and ADC benefits and the legislative history of the Act in order to ascertain the Legislature's intent. When a statute is ambiguous and must be construed, the principal objective is to determine and give effect to the legislative intent of the enactment. *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002). For the reasons that follow, we conclude that the Legislature intended the family cap to apply only to families participating in the Employment First program under a self-sufficiency contract and that the Department's assignments of error to the contrary are without merit.

As previously noted, the Legislature declared that the intent of the Act was, in part, to reform the welfare system to remove disincentives to work, promote economic self-sufficiency, and provide individuals and families the support needed to move from public assistance to economic self-sufficiency. See § 68-1709. However, § 68-1709 also expresses the Legislature's intent to "provid[e] continuing assistance and support . . . for individuals and families with physical, mental, or intellectual limitations preventing total economic self-sufficiency." Furthermore, protection of dependent children is the paramount goal of ADC. *King v. Smith*, 392 U.S. 309, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968). We have stated that the ADC program aims, among other things, "to encourage the care of dependent children in their own homes by parents who experience a substantial reduction in their ability to care for or support their dependent children." *Knowlton v. Harvey*, 249 Neb. 693, 703, 545 N.W.2d 434, 441 (1996).

The Department's interpretation of the family cap does not serve to advance any of these expressed purposes. To the extent that the family cap serves to promote a transition from public assistance to economic self-sufficiency, there is little to be gained in applying the family cap to families who receive non-time-limited assistance because full self-sufficiency is unrealistic. Furthermore, the Department's interpretation of the family cap does not advance the Legislature's intent to provide continuing assistance and support for individuals and families with disabilities, and undermines the goal of the ADC program to protect dependent children.

■ In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002). The expressed purposes of the Act and ADC benefits are inconsistent with the Department's interpretation of § 68-1724(2)(b).

■ Furthermore, the legislative history of the Act does not support the Department's interpretation of § 68-1724(2)(b). In construing an ambiguous statute, a court may examine the legislative history of the act in question to assist in ascertaining the intent of the Legislature. *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002). The primary purpose of the Act is to require adults *"who are able to work . . .* to participate in one or more ways, such as education, job seeking skills training, work experience, job search or employment." (Emphasis supplied.) Introducer's Statement of Intent, L.B. 1224, Committee on Health and Human Services, 93d Leg., 1st Sess. (Feb. 10, 1994). As explained by then Governor E. Benjamin Nelson, testifying in support of L.B. 1224:

> The goal of LB 1224 is to move recipients who are able to work from welfare to productive work so that they are able to support their families and themselves as well. These initiatives will not excuse government from the responsibility of assisting people who truly depend on public assistance for their ongoing day-to-day survival. . . . In short, we want

to reshape Nebraska's public policy to keep people out of the welfare system by focusing on job training and decent jobs, jobs that will enable people to support their families, to help all who are able to move quickly beyond welfare to the job market and a decent job. For those who are unable to leave public assistance, we want to support them also in keeping their human dignity.

Committee on Health and Human Services Hearing, 93d Leg., 1st Sess. 5 (Feb. 10, 1994). "[T]hose folks who are unable to work will be taken care of in the manner as they have in the past and we will work to support them." *Id.* at 7.

Similarly, Mary Dean Harvey, director of the then Department of Social Services, testified that "[o]nly those persons who are recipients of Aid to Dependent Children who are *able to work* will be included in this first cut of the project." (Emphasis supplied.) *Id.* at 39. Harvey testified, regarding the family cap, that "[c]hildren born to a family after the initial ten months of program participation will not increase the cash participation" because "[t]he cash assistance payment standard will be based on the family size *at the time of the contract.*" (Emphasis supplied.) *Id.* at 42. Harvey's testimony that the 10-month period would commence "at the time of the contract" suggests that the "program" at issue is based on participation in a self-sufficiency contract.

Furthermore, the family cap was extensively discussed during the floor debate on L.B. 1224, and an amendment to the bill was offered that would have removed the family cap. In speaking against that amendment, Senators Don Wesely and Jessie Rasmussen each explained that the family cap was premised on the existence and obligations of a self-sufficiency contract. As Senator Wesely explained:

The idea is you come into ADC, you sign the self-sufficiency contract, that's a contract between the state and the family . . . . Part of the contract is envisioned to say this amount of children that now are in the family will be covered and have this assistance. . . . But if, ten months after that contract, you bear a child, what we're saying is we signed a contract, we had an understanding of what the conditions were and a decision was made to have another child . . . there will not be the additional [cash assistance].

Floor Debate, 93d Leg., 1st Sess. 11940 (Mar. 29, 1994). Accord Floor Debate, L.B. 455, 94th Leg., 1st Sess. 7966-67 (May 23, 1995). See, also, Floor Debate, L.B. 1224, 93d Leg., 1st Sess. 11951 (Mar. 29, 1994) (remarks of Senator Rasmussen); Floor Debate, L.B. 455, 94th Leg., 1st Sess. 5014 (Apr. 20, 1995) (remarks of Senator Connie Day).

Read as a whole, the legislative history indicates that the Legislature intended the family cap to apply to individuals and families participating in the Employment First program pursuant to a self-sufficiency contract. Discussion of the family cap was focused on the need to promote self-sufficiency, and to the extent that individuals and families unable to achieve self-sufficiency were discussed, it was indicated that their support would not be substantially affected by the Act. There is, at the very least, no evidence to support applying the family cap to families in the non-time-limited benefit group, and in the absence of that clearly expressed intent, we must construe § 68-1724(2)(b) to effectuate the beneficent purposes of the Act and the ADC program. Cf., *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995) (Employment Security Law liberally construed to accomplish its beneficent purposes); *Belitz v. City of Omaha*, 172 Neb. 36, 108 N.W.2d 421 (1961) (pension laws, as statutes of beneficial character, should be liberally construed in favor of those intended to be benefited).

The Department argues that the district court's interpretation of the family cap could hurt some ADC recipients. The Department contends that some families receive child support on behalf of newly born children and that those families would be required to turn that child support over to the Department if the families received ADC cash assistance for the same children. The Department's argument fails for two reasons. First, while some families receive child support and might lose money as a result of accepting ADC benefits, many other families are unable to collect child support, and would benefit from additional ADC cash assistance. In other words, no matter how the cap is applied, some families will benefit, while others may be disadvantaged. The Department's argument provides no basis for preferring one interpretation over the other.

More significant, however, is that the objective of statutory interpretation is to determine and give effect to the intent of the Legislature. See *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002). The purpose of the family cap is obviously not to protect families' abilities to retain child support payments. Because the Department's observations regarding child support do not illuminate legislative intent, they are irrelevant to our interpretation of the family cap.

Finally, the Department argues that the district court's interpretation of § 68-1724(2)(b) would render the family cap unconstitutional. The Department notes, correctly, that when a challenged statute is susceptible to more than one reasonable construction, a court uses the construction that will achieve the purposes of the statute and preserve the statute's validity. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997). The Department contends that we should adopt its interpretation of the family cap in order to prevent the family cap from violating the Equal Protection Clause of the U.S. Constitution.

The Department's argument is that the equal protection rights of those able to work would be violated if the family cap was applied to individuals and families with the capacity to work, but not to individuals and families without the capacity to work. The Department asserts that the family cap must "uniformly be applied to all participants in the ADC program." Brief for appellant at 21.

This argument is without merit, for which the Department should be thankful. The Department may be overlooking the implications of its advocacy in this particular appeal. The Department's equal protection analysis could, if adopted, result in the invalidation of the entire Act. After all, the Act is premised on the distinction between families participating in self-sufficiency contracts and those receiving non-time-limited benefits. Logically, the "uniform" treatment urged by the Department would mean uniform application not only of the family cap, but *all* the requirements of the Act—including, for example, time-limited benefits, work-related activities, and self-sufficiency contracts.

■ The Department's argument fails, however, because there is a rational basis for treating the plaintiffs differently from others who are subject to the family cap. The Equal Protection Clause of the U.S. Constitution does not forbid classifications; it simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000). Since no suspect classification or fundamental right is implicated in this case, the Act will be viewed as a valid exercise of state power if it is rationally related to a legitimate governmental purpose. See *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998). The rational relationship standard, as the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, is offended only if a classification rests on grounds which are wholly irrelevant to the achievement of the government's objectives. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003).

As previously noted, families are placed in the non-time-limited benefit group when full self-sufficiency for the family is not possible. See § 020.09A. The legitimate objectives of the Act are to provide individuals and families the support needed to move from public assistance to economic self-sufficiency, while also providing continuing assistance to those for whom full self-sufficiency is not possible. See § 68-1709. Enforcing the family cap on those who are working toward self-sufficiency, but not on those who are incapable of full self-sufficiency, is rationally related to those objectives. Thus, the Equal Protection Clause is satisfied, and the Department's assignment of error is without merit.

■ For the foregoing reasons, we hold that "participation in the program," within the meaning of § 68-1724(2)(b), refers to participation in a self-sufficiency contract as described in § 68-1719 and that the family cap established by § 68-1724(2)(b) does not apply to families who are not participating in a self-sufficiency contract. The decision of the district court to this effect was correct and is affirmed.

## CONCLUSION

We conclude, based on our review of the statutes and legislative history, that the family cap established by § 68-1724(2)(b)

was not intended to apply to families in which there is no adult with the capacity to work. Absent a clearly expressed legislative intent to apply the family cap to such families, we must construe the Act in the manner which best achieves its beneficent purposes. Therefore, the judgment of the district court is affirmed.

AFFIRMED.