HUY LE AND MELISSA LE, INDIVIDUALLY AND AS PARENTS OF
THANH LE, APPELLANTS, V. THOMAS LAUTRUP, APPELLEE.
716 N.W.2d 713

Filed July 7, 2006. No. S-04-743.

Daniel P. Chesire, of Lamson, Dugan & Murray, L.L.P., and Raymond E. Walden, of Walden Law Office, for appellants.

Michael G. Mullin and Michaela A. Messenger, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for amicus curiae Nebraska Association of Trial Attorneys.

Robert T. Grimit and Molly M. Egley Brummond, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for amicus curiae Nebraska Insurance Information Service.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Thanh Le was injured in a one-vehicle accident. The vehicle was driven by Thanh's grandfather, Thomas Lautrup. Thanh's parents, Huy Le and Melissa Le, filed a negligence action against Lautrup in the district court for Douglas County. In their petition, the Les challenged the constitutionality of Nebraska's guest statute, Neb. Rev. Stat. § 25-21,237 (Reissue 1995), which limited Lautrup's liability to damage caused by his gross negligence or intoxication. Intoxication was not an issue in this case.

The district court rejected the Les' challenge to the constitutionality of § 25-21,237 and, in response to Lautrup's demurrer, dismissed the Les' theories of recovery based on simple negligence. The action went to trial on the sole remaining theory of gross negligence, and the jury found in Lautrup's favor. The Les appeal. We conclude that the district court did not err in rejecting the Les' challenge to the constitutionality of § 25-21,237, and we affirm.

## STATEMENT OF FACTS

On June 20, 2001, Thanh Le, then 15 years old, was a passenger in the back seat of a vehicle driven by Lautrup. Lautrup and

Thanh were returning to Omaha, Nebraska, from a family fishing and camping trip at Calamus Lake near Burwell, Nebraska. While driving on Highway 91 in Platte County, Nebraska, Lautrup's vehicle drifted off the right side of the highway and the right wheels of the vehicle left the paved surface. Lautrup attempted to correct his course, but the right wheels hit the edge of the pavement, causing Lautrup to lose control of the vehicle and causing the vehicle to roll. Thanh was thrown from the vehicle and was injured. Police investigators determined that Lautrup had not been drinking, that he had not fallen asleep, and that he was not speeding prior to the accident, but that a momentary inattention on Lautrup's part contributed to the accident. At the time of the accident, neither Thanh nor his parents lived with Lautrup nor were they financially supported by Lautrup.

The Les filed an action against Lautrup on February 21, 2002. In an amended petition, the Les set forth three theories of recovery: (1) negligence in the operation of the vehicle, (2) gross negligence within the meaning of § 25-21,237, and (3) negligence in failing to ensure that Thanh was properly secured by a seatbelt. The Les alleged in their petition that Lautrup's liability could be predicated on negligence without the need to prove gross negligence under § 25-21,237 because § 25-21,237 was unconstitutional to the extent it pertained to the grandparent-grandchild relationship.

Section 25-21,237, as amended in 1981, controls this case. Section 25-21,237 provides:

> The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person related to such owner or operator as spouse or within the second degree of consanguinity or affinity who is riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by (1) the driver of such motor vehicle being under the influence of intoxicating liquor or (2) the gross negligence of the owner or operator in the operation of such motor vehicle.

> For the purpose of this section, the term guest is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor but shall not be construed to apply to or include any such passenger in a

motor vehicle being demonstrated to such passenger as a prospective purchaser. Relationship by consanguinity or affinity within the second degree shall include parents, grandparents, children, grandchildren, and brothers and sisters. Should the marriage of the driver or owner be terminated by death or dissolution, the [affinal] relationship with the blood kindred of his or her spouse shall be deemed to continue.

Lautrup demurred to the two theories of recovery based on simple negligence and argued that recovery on such basis was barred by § 25-21,237. The Les responded to the demurrer by arguing that § 25-21,237 was unconstitutional. The district court concluded that § 25-21,237 was constitutional and that it prevented recovery on the basis of simple negligence. The court therefore dismissed those theories of recovery based on simple negligence. The case proceeded to trial solely on the basis of gross negligence. The jury found in favor of Lautrup. The Les appeal.

## ASSIGNMENTS OF ERROR

The Les assert that the district court erred in failing to find § 25-21,237 to be unconstitutional and in dismissing their theories of recovery based on simple negligence.

## STANDARD OF REVIEW

■ Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *Ptak v. Swanson, ante* p. 57, 709 N.W.2d 337 (2006).

## ANALYSIS

The Les assert that § 25-21,237 is unconstitutional and that the district court erred when it concluded that their theories of recovery based on simple negligence must be dismissed and that they were required to prove gross negligence by Lautrup in order to succeed on their petition. We conclude that the Les have failed to establish that § 25-21,237 is unconstitutional and that therefore, the district court did not err when it concluded that § 25-21,237 was not unconstitutional and dismissed their theories of recovery based on simple negligence.

The guest statute, as amended in 1981 and found at § 25-21,237, controls this case. In *Botsch v. Reisdorff*, 193 Neb.

165, 226 N.W.2d 121 (1975), this court rejected a constitutional challenge to an earlier version of the guest statute which was then codified at Neb. Rev. Stat. § 39-6,191 (Reissue 1974). Prior to the Legislature's amendment of the guest statute in 1981, this court rejected various invitations to reconsider *Botsch* and to declare the guest statute unconstitutional. See, *Cushing v. Bernhardt*, 210 Neb. 272, 313 N.W.2d 688 (1981); *Beebe v. Sorensen Sand & Gravel Co.*, 209 Neb. 559, 308 N.W.2d 829 (1981); *Kreifels v. Wurtele*, 206 Neb. 491, 293 N.W.2d 407 (1980); *Circo v. Sisson*, 193 Neb. 704, 229 N.W.2d 50 (1975); *Lubash v. Langemeier*, 193 Neb. 371, 227 N.W.2d 405 (1975).

The Legislature amended the guest statute in 1981. Prior to the amendment, the statute had pertained to all nonpaying guests; that is, nonpaying guests were precluded from bringing suit based on simple negligence. After the amendment, the guest statute pertained to only nonpaying guests who were related to the driver within the second degree of consanguinity which was defined to include parents and children, grandparents and grandchildren, and brothers and sisters. In 1998, this court rejected a constitutional challenge to the post-1981 version of the guest statute. *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998).

The Les argue that *Coburn* is not controlling because the question of constitutionality was not fully explored and was not necessary to the disposition of that case. We recognize that *Coburn*, relying on pre-1981 authority, summarily concluded that the guest statute was not unconstitutional without discussion of the bases for the challenge in *Coburn* or the fact that the statute had been amended subsequent to the time that prior challenges had been rejected. We therefore believe it would be helpful to consider whether the current guest statute is constitutional in light of the arguments offered by the Les.

On appeal, the Les argue that the guest statute violates three provisions of the Nebraska Constitution: the due process and equal protection clauses of Neb. Const. art. I, § 3, and the special privileges and immunities clause of Neb. Const. art. III, § 18. Neb. Const. art. I, § 3, provides: "No person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws." Neb. Const. art. III, § 18, provides: "The Legislature shall not pass local or special laws . . .

[g]ranting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever." We consider the constitutionality of § 25-21,237 under Neb. Const. art. I, § 3, and art. III, § 18.

*Section 25-21,237 Does Not Violate Neb. Const. art. I, § 3.*

■ Although the Les assert that the statute violates both the due process and the equal protection clauses of the Nebraska Constitution, their arguments focus mainly on the equal protection aspects of Neb. Const. art. I, § 3, and we therefore focus our analysis on the equal protection clause. The party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause. *Waste Connections of Neb. v. City of Lincoln*, 269 Neb. 855, 697 N.W.2d 256 (2005). We conclude that the Les have not proved that § 25-21,237 violates Nebraska's equal protection clause.

■ The principle of equal protection guarantees that similar persons will be dealt with similarly by the state, but does not foreclose the state from classifying persons or from differentiating one class from another when enacting legislation. *Waste Connections of Neb., supra.* The equal protection guarantee simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike. *Id.* In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose. *Id.*

■ Despite the Les' argument that we should apply a higher standard of scrutiny, we determine that no fundamental right or suspect classification is involved here and that therefore, the rational basis test applies. Under the rational basis test, the Equal Protection Clause is satisfied as long as there is (1) a plausible policy reason for the classification, (2) the legislative facts on which the classification is apparently based may rationally have been considered to be true by the governmental decisionmaker, and (3) the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. See *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). The rational relationship standard, as the

most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, is offended only if a classification rests on grounds which are wholly irrelevant to the achievement of the government's objectives. *Mason v. State*, 267 Neb. 44, 672 N.W.2d 28 (2003). When determining whether a rational basis exists for a legislative classification, courts look to see if any state of facts can be conceived to reasonably justify the disparate treatment which results. *Gourley, supra.*

Applying these standards to the current version of the guest statute, we conclude that § 25-21,237 does not violate the equal protection clause of the Nebraska Constitution. In our cases prior to 1981 concluding that the guest statute was constitutional under an equal protection analysis, the primary legitimate governmental interests behind the guest statute were identified as "the promotion of hospitality, and the prevention of fraud and collusion." *Botsch v. Reisdorff*, 193 Neb. 165, 170, 226 N.W.2d 121, 126 (1975). In *Botsch*, this court found a rational relationship between these governmental interests and the guest statute as it then existed.

In the present case, in response to the Les' challenge, Lautrup acknowledges that hospitality may no longer be an important interest with respect to the guest statute. Instead, Lautrup relies mainly on the objective of prevention of fraud and collusion as legitimate governmental interests justifying the present version of the guest statute. Lautrup makes further subsidiary arguments, not repeated here, in support of the constitutionality of § 25-21,237. Lautrup also notes that because lawsuits based on intoxication or gross negligence are still permitted under § 25-21,237, it cannot be said that all suits between grandparents and grandchildren are precluded under this statute.

We have reviewed the legislative history of the 1981 amendment to the guest statute. Our review of the legislative history of the 1981 amendment indicates that the prevention of fraud and collusion, rather than hospitality or any other interest, was the main stated justification for the Legislature to retain the guest statute with respect to certain relatives when it repealed the statute as it related to other guests. We have reviewed the current version of the guest statute and the associated legislative history and conclude that the statute's terms are rationally related to

the stated interest of preventing fraud and collusion. As noted above, the former version of the guest statute was upheld by this court as rationally related to the legitimate governmental interest of preventing fraud and collusion. See *Botsch, supra.* The current version of the statute differs from the earlier version in that instead of precluding suits based on simple negligence by all nonpaying guests, it now precludes suits based on simple negligence if brought by nonpaying relatives within the second degree of consanguinity. The group encompassed by the current statute is a subset of the group encompassed by the previous guest statute. Because the universe of nonpaying guests in general has been found rationally related to preventing fraud and collusion, it logically follows that in the absence of compelling developments, a rational subset of that universe remains rationally related to that interest. With respect to the legitimate governmental interest of preventing fraud and collusion, the subset of nonpaying relatives within the second degree of consanguinity is a rational subset of the universe of nonpaying guests. The Legislature could rationally have concluded that close relatives were more likely than other guests to collude with the driver in order to perpetrate a fraud. In rejecting an equal protection challenge to a guest statute that similarly limited its scope to close relatives, the Court of Appeals of Indiana noted that in so limiting the scope,

> [t]he legislature may have perceived a greater risk of collusive lawsuits among family members, than among mere acquaintances. Also, a jury may be particularly inclined to indulge in the "Robin Hood" tactic of robbing from the "rich" insurance companies to give to the "poor" victims where the parties are from the same family.

*Davidson, by Floyd v. Davidson*, 558 N.E.2d 849, 851 (Ind. App. 1990). We conclude that the 1981 amendment of the guest statute to limit the scope to nonpaying relatives within the second degree of consanguinity was rationally related to the stated legitimate purpose of preventing fraud and collusion.

We note that after reviewing the legislative history of the 1981 amendment, the dissent in this case concludes that the "only reason" the guest statute was retained as to close relatives was "because of a political compromise—not because of any

recognized or asserted classification that is related to a legitimate state interest." The dissent then cites *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989), for the proposition that "[p]olitical compromise as a justification, in and of itself, simply does not establish that the classification is rationally related to a legitimate governmental purpose." In *Distinctive Printing & Packaging Co.*, we rejected a party's argument that "necessary political compromise in and of itself provides a rational basis for legislative classification." 232 Neb. at 851, 443 N.W.2d at 571. However, we further noted that "in determining whether a rational basis exists for a legislative classification, courts look to see if any state of facts can be conceived to reasonably justify the disparate treatment which results." *Id.* at 852, 443 N.W.2d at 571. We therefore recognized that legislative classifications are often the result of political compromise and determined that although political compromise itself is not a rational basis for legislative classification, a legislative classification that is the result of political compromise may still be justified by an independent rational basis. As stated above, we conclude that the 1981 amendment to § 25-21,237 was rationally related to a legitimate governmental purpose, and evidence that the amendment was in part the result of political compromise does not alter that conclusion.

The Les make various arguments to the effect that the guest statute is unconstitutional because it does not cover all situations in which a driver and passenger might collude and it does not apply to other situations not involving motor vehicles in which persons might collude to defraud insurance companies. However, in the context of equal protection, when the Legislature seeks to inaugurate reforms in the area of economics or social welfare, it need not choose between attacking every aspect of the problem or not attacking the problem at all. *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). Instead, it is sufficient if the action taken is rationally based and free from invidious discrimination. *Otto v. Hahn*, 209 Neb. 114, 306 N.W.2d 587 (1981). We find no indication that the Legislature's decision to minimize opportunity for fraud and collusion by limiting application of the guest statute to certain relatives was a result of invidious discrimination.

■ Further, in economics and social welfare, a statute does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). The fact that other legislative classification schemes could have been selected does not mean that the scheme chosen is constitutionally infirm. *Id.* As long as the classification scheme chosen by the Legislature rationally advances a reasonable and identifiable governmental objective, a court must disregard the existence of other methods that other individuals might have preferred. *Id.* We do not view the Legislature's actions with respect to the guest statute as amended in 1981 to be wholly irrelevant or unrelated to the stated objectives, and we, therefore, cannot conclude that the Legislature's actions violated Nebraska's equal protection clause.

■ The Les also make various arguments to the effect that the guest statute is not good public policy. In every constitutional challenge, there attaches the presumption that all acts of the Legislature are constitutional, with all reasonable doubts resolved in favor of constitutionality. *Otto, supra.* In reviewing a statute, we do not pass judgment on the wisdom or the necessity of the legislation or whether the statute is based upon assumptions which are scientifically substantiated. Even misguided laws may nevertheless be constitutional. *Id.* Therefore, our inquiry under equal protection analysis is not whether we agree with the wisdom or necessity of the law, but whether the law is rationally related to a legitimate governmental interest.

We conclude that the current version of the guest statute is rationally related to the legitimate governmental interest of preventing fraud and collusion. Such interest supports the statute against the Les' equal protection challenge. We therefore conclude that § 25-21,237 does not violate Neb. Const. art. I, § 3.

*Section 25-21,237 Does Not Violate Neb. Const. art. III, § 18.*

The Les also challenge § 25-21,237 as special legislation in violation of the special privileges and immunities clause of Neb. Const. art. III, § 18. We conclude that § 25-21,237, as amended in 1981, does not constitute special legislation.

■ We have described the purpose of the constitutional safeguard against special legislation as follows:

By definition, a legislative act is general, and not special, if it operates alike on all persons of a class or on persons who are brought within the relations and circumstances provided for and if the classification so adopted by the Legislature has a basis in reason and is not purely arbitrary. . . . General laws embrace the whole of a subject, with their subject matter of common interest to the whole state. Uniformity is required in order to prevent granting to any person, or class of persons, the privileges or immunities which do not belong to all persons. . . . It is because the legislative process lacks the safeguards of due process and the tradition of impartiality which restrain the courts from using their powers to dispense special favors that such constitutional prohibitions against special legislation were enacted.

*Haman v. Marsh*, 237 Neb. 699, 709, 467 N.W.2d 836, 844-45 (1991). The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants "special favors" to a specific class. A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003).

Special legislation analysis is similar to an equal protection analysis, and often the two are discussed together because, at times, both issues can be decided on the same facts. *Gourley, supra.* As a result, language normally applied to an equal protection analysis is sometimes used to help explain the reasoning employed under a special legislation analysis. *Id.* But the focus of each test is different. The analysis under a special legislation inquiry focuses on the Legislature's purpose in creating the class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation. This is different from an equal protection analysis under which the state interest in legislation is compared to the statutory means selected by the Legislature to accomplish that purpose. *Id.*

When the Legislature confers privileges on a class arbitrarily selected from a large number of persons standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in

the kind of improper discrimination prohibited by the Nebraska Constitution. *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. *Id.*

The general test of constitutionality with respect to prohibitions against special legislation is reasonableness of classification and uniformity of operation. Classification is proper if the class at issue has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act. *Id.*

The Les make no argument that § 25-21,237 created a closed class, and therefore, our special legislation analysis focuses on whether the guest statute created an arbitrary and unreasonable method of classification. We concluded above that § 25-21,237 was rationally related to a legitimate governmental interest and therefore did not violate the equal protection clause of the Nebraska Constitution. Similar considerations and analysis lead us to conclude that the guest statute does not create an arbitrary and unreasonable method of classification in violation of the Nebraska Constitution's ban on special legislation.

As noted above, this court rejected constitutional challenges to the pre-1981 version of the guest statute. That version made a classification of passengers based on whether they were paying passengers or nonpaying guests, and we concluded, inter alia, that the guest statute as it related to nonpaying persons was constitutional. See *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975). The current version of the statute narrows the classification of nonpaying guests to certain nonpaying relatives thought to be more inclined to collude with drivers. As discussed above, the purpose of the statute is to prevent fraud and collusion, and we believe that there is a substantial difference in circumstances surrounding nonpaying relatives as distinguished from other nonpaying persons such that creation of a classification limited to the nonpaying relatives identified in § 25-21,237 is not arbitrary or unreasonable.

The guest statute is not the type of law prohibited by the special legislation clause. It does not arbitrarily benefit or grant "special favors" to a specific class and it operates uniformly as to all nonpaying relatives within the second degree of consanguinity. We conclude therefore that the guest statute, § 25-21,237, does not violate the prohibition on special legislation under Neb. Const. art. III, § 18.

## CONCLUSION

We conclude that the Les failed to establish that the current version of the guest statute, § 25-21,237, violates the Nebraska Constitution, and we therefore conclude that the district court did not err when it concluded that § 25-21,237 was constitutional. The district court did not err when it dismissed the Les' theories of recovery based on simple negligence. Accordingly, we affirm.

AFFIRMED.

GERRARD, J., dissenting.

I disagree with the majority's determination that the Nebraska guest statute, Neb. Rev. Stat. § 25-21,237 (Reissue 1995), does not violate the equal protection clause of the Nebraska Constitution. The guest statute, as amended in 1981, is not rationally related to a legitimate governmental purpose, as required under equal protection principles, and is therefore unconstitutional. Accordingly, I respectfully dissent.

The majority correctly notes that this court has previously addressed the constitutionality of the Nebraska guest statute, finding no violation of the equal protection clause. See, i.e., *Cushing v. Bernhardt*, 210 Neb. 272, 313 N.W.2d 689 (1981); *Kreifels v. Wurtele*, 206 Neb. 491, 293 N.W.2d 407 (1980); *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975). However, the only occasion in which this court has had the opportunity to examine the guest statute since its amendment in 1981 was in *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998). In *Coburn*, we disposed of the issue regarding the constitutionality of the guest statute by citing to preamendment cases, such as *Botsch, supra*, summarily finding the guest statute to be constitutional. This was error on our part; most specifically, I concede that I erred in joining the judgment in *Coburn* based on this reasoning. We should have performed an analysis of the amended version of the guest statute within the equal protection

framework, independent of analyses made by this court in evaluating the preamendment version of the statute. The majority has now engaged in such an analysis in this appeal; however, I disagree with the conclusion reached by the majority after applying the appropriate analysis.

In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose. *Waste Connections of Neb. v. City of Lincoln*, 269 Neb. 855, 697 N.W.2d 256 (2005). The party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause. *Id.* The Les have met their burden in this case.

Among the arguments made on appeal, the Les argue that this court should follow the reasoning of *Whitworth v. Bynum*, 699 S.W.2d 194 (Tex. 1985), in which the Texas Supreme Court determined that its guest statute—also limited in application to persons related within the second degree of consanguinity or affinity—violated the state equal protection clause because the classifications drawn by the statute were not rationally related to a legitimate state interest. In *Whitworth*, the court acknowledged that the legislative purpose behind the guest statute was to prevent collusion between an insured party and a guest. *Id.* Thus, the court stated, the guest statute "creates a presumption that all automobile passengers suing a driver who is within the second degree of affinity or consanguinity do so collusively." *Id.* at 197. The court stated:

> We refuse to indulge in the assumption that close relatives will prevaricate so as to promote a spurious lawsuit. . . . Dishonest individuals will always attempt to circumvent the intent of the statute by lying, while honest citizens are penalized when the truth brings them within the statutory scope denying them a negligence cause of action.

*Id.* The court concluded that the classifications drawn by the guest statute were not rationally related to a legitimate state interest and that, thus, the state guest statute was unconstitutional. *Id.*

I agree not only with the reasoning of the Texas Supreme Court, but with the rationale of a host of other states that have found their state guest statutes unconstitutional because of a lack

of a rational relationship between such statutes and collusion prevention. The "collusion prevention" rationale is simply inadequate to justify, in equal protection terms, the elimination of all automobile guests' (related within the second degree of consanguinity or affinity) rights to recover for negligence. Although the guest statute may prevent those rare collusive suits connived by automobile drivers and their "related" passengers to defraud insurers, Nebraska's classification scheme is far too gross and overinclusive to be justified by this end, since the statute bars the great majority of valid suits along with the rare fraudulent claim.

In *Brown v. Merlo*, 8 Cal. 3d 855, 106 Cal. Rptr. 388, 506 P.2d 212 (1973), the California Supreme Court concluded that the state guest statute violated equal protection principles, finding in part that the distinction drawn by the statute was not rationally related to its purpose of eliminating collusive lawsuits. The statute at issue in *Merlo* was similar to the pre-1981 Nebraska guest statute, limiting actions for damages brought by nonpaying passengers to those alleging intoxication or willful misconduct of the driver. In *Merlo*, 8 Cal. 3d at 873, 106 Cal. Rptr. at 401, 506 P.2d at 225, the court explained:

> The theory behind this "compensation" classification appears to be that the driver who gives a free ride to a passenger does so because of a close relationship with his guest; because of the presumed closeness of this relationship, the driver may falsely admit liability so that his guest may collect from the driver's insurance company. To combat this risk of potential fraud, the guest statute eliminates all causes of action in negligence for automobile guests.

The court concluded that "it is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits." *Id.* at 875, 106 Cal. Rptr. at 402, 506 P.2d at 226. The New Mexico Supreme Court agreed, adding that the guest statute does little to prevent collusion, since the parties can lie about whether compensation was paid and thereby avoid the bar of the statute, just as they could perjure themselves about the negligence issue if the guest statute did not exist. *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975). Further, the North Dakota Supreme Court added that

> [i]n all other cases, we rely upon the standard remedies of perjury, the efficacy of cross-examination, the availability of pretrial discovery, and the good sense of juries to detect false testimony if it should occur. We do not withdraw the remedy from all injured persons in order to avoid a rare recovery based upon false testimony.

*Johnson v. Hassett*, 217 N.W.2d 771, 778 (N.D. 1974).

The *Merlo* court explained that the guest statute imposed an overinclusive classification scheme:

> Instead of confining its disability to those who actually institute collusive suits, the provision reaches out beyond such persons and burdens the great number of honest automobile guests. . . . We believe that in barring suits by all automobile guests simply to protect insurance companies from some collusive lawsuits, the guest statute exceeds the bounds of rationality and constitutes a denial of equal protection.

8 Cal. 3d at 877, 106 Cal. Rptr. at 403-04, 506 P.2d at 227-28. See, also, *Nehring v. Russell*, 582 P.2d 67 (Wyo. 1978); *Laakonen v. District Court*, 91 Nev. 506, 538 P.2d 574 (1975); *Primes v. Tyler*, 43 Ohio St. 2d 195, 331 N.E.2d 723 (1975); *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974).

Although the cases cited above address statutes more akin to the earlier version of Nebraska's guest statute, the same logic extends to the current language of the statute. Section 25-21,237 bars nonpaying passengers related to the driver within the second degree of consanguinity or affinity from filing lawsuits for damages against the driver unless the damages are alleged to have been caused by the intoxication or gross negligence of the driver. The classification presumes that all drivers and passengers related within the second degree of consanguinity or affinity will collude in negligence actions for damages caused by the drivers. However, such a broad presumption penalizes the vast majority of passengers who do not engage in such fraudulent behavior and disregards the procedural safeguards in our justice system designed to determine the truth of damage claims.

Furthermore, persons who are of a mindset to engage in collusion will not be deterred by the statute but are likely to instead offer that the passenger provided compensation for the ride; that

the driver was intoxicated while operating the vehicle; or that the driver was grossly negligent in operating the vehicle, any of which would place them outside the scope of the statute. In other words, the statute has the perverse effect of punishing those who are honest, while doing nothing to stop those who are willing to lie. Thus, "collusion prevention" is hardly a rational basis for applying a blanket provision barring passengers from bringing general negligence claims against drivers to whom they are related.

The Legislature itself did not present a rational basis for adopting the classification at issue in Nebraska's current guest statute. In that regard, I disagree with the majority's reading of the legislative history of the 1981 amendment. In discussing 1981 Neb. Laws, L.B. 54, the bill that ultimately amended Nebraska's guest statute, limiting its application to family members, the senator responsible for introducing the bill explained essentially that the bill was a compromise, narrowing the statute's application but also accommodating the interests of insurance companies. The senator promised not to propose a complete repeal of the guest statute, if the insurance industry would accept a limited repeal, narrowing the class of limited claims to those brought by guest passengers that were "relatives" of the owner and operator of the vehicle. If the insurance industry refused to accept the compromise, the senator vowed to seek a complete repeal of the guest statute and stated that it would be "a no holds barred contest, this year, next year and however long it takes." Judiciary Committee Hearing, L.B. 54, 87th Sess. 2 (Jan. 28, 1981). There was no discussion of a history of collusive claims amongst "relatives" in Nebraska or the effect, if any, of these types of claims on automobile insurance rates in the State of Nebraska. There was no pretense when the Legislature considered the 1981 amendment to Nebraska's guest statute— the amendment process was pure politics at its finest.

During the floor debate on L.B. 54, the sponsoring senator stated:

> [T]o remove even the vestige of a possibility of say, alleged collusion, between a father and a daughter or whatever, I accepted that as the compromise necessary to sell the insurance companies or one of the many elements I utilized in

dealing with the insurance companies because that was the necessary final piece, very simply.

Judiciary Committee, 87th Sess. 1144 (Feb. 24, 1981).

Thus, prior to 1981, the Nebraska guest statute limited claims brought by any nonpaying passenger against an owner or operator of a motor vehicle. The legislative history reveals that this language was favorable to the automobile insurance industry because liability with respect to nonpaying guests was limited to those guests that could prove damages caused by gross negligence or intoxication. In an effort to avoid opposition by the insurance industry, the 1981 amendment to the guest statute proposed a limited repeal, narrowing the class of limited claims to those brought by guest passengers related to the owner or operator as spouse or within the second degree of consanguinity or affinity. In other words, in exchange for the insurance industry's acquiescence, the law was only partially repealed, eliminating some but not all of its irrational application.

In that regard, the majority quotes the Indiana Court of Appeals for the assertions that the Legislature " 'may have perceived' " a greater risk of collusion among family members, or a risk that juries would unfairly compensate injured family members at the expense of insurance companies. I find these assertions unpersuasive. First, the legislative record is inconsistent with the claim that the Legislature perceived a greater risk of collusion among family members. Further, it is hard to conclude such a perception was rational, in the absence of any evidence before the Legislature providing any facts upon which a perception could have been based, or upon which the Legislature could have concluded that the statute would actually be effective at preventing collusion or fraud. Finally, I see no basis for any unsupported claim that a jury's inclination to attack the "deep pockets" of a "rich" insurance company may be more pronounced when the plaintiffs are related to one another. Nebraska law does not allow evidence of liability insurance or policy limits to be admitted into evidence. See *Kvamme v. State Farm Mut. Auto. Ins. Co.*, 267 Neb. 703, 677 N.W.2d 122 (2004). In short, the majority's hypotheses about what the Legislature might have been thinking are not compelling.

Under the rational basis standard, equal protection is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. See *State v. Garber*, 249 Neb. 648, 545 N.W.2d 75 (1996). Based on a thorough review of the legislative history of L.B. 54, the classification accomplished through the amendment was the result of pure political compromise. The only reason certain family members remain subject to the limitations of the guest statute is because of a political compromise—not because of any recognized or asserted classification that is related to a legitimate state interest. Political compromise as a justification, in and of itself, simply does not establish that the classification is rationally related to a legitimate governmental purpose. See *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566 (1989).

For that reason, I also disagree with the majority's contention that because we approved the constitutionality of the pre-1981 guest statute in *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975), we are somehow required to approve of the classification created by the 1981 amendment. The majority contends that because the *Botsch* court found a rational relationship between all nonpaying guests and preventing fraud and collusion, "it logically follows that in the absence of compelling developments, a rational subset of that universe remains rationally related to that interest." That is only true if the "subset" of nonpaying guests at issue is based upon a *classification* that bears a rational relationship to a legitimate governmental purpose. After all, "nonpaying guests whose last names begin with a vowel" would be a subset of the "universe" of nonpaying guests, yet we would hardly approve of such an arbitrary classification. Since the classification set forth in the 1981 amendment was based on little more than raw political compromise, I find it to be equally capricious.

While I recognize the necessary and appropriate deference that should be given to the Legislature when this court performs a rational basis analysis on an equal protection claim, at some point, the judiciary must draw the line and truly require that the legislative classification is *somehow* rationally related to a legitimate governmental purpose. The current guest statute has crossed that line. Certainly, the prevention of wholesale fraud and collusion is a legitimate governmental objective; however, the legislative

record does not reflect that this was the objective of the classification created in 1981. In any event, limiting recovery for *all* family members is not rationally related to that objective, as it rests on the unreasonable presumption that *all* family members will collude, and does not serve to prevent actual collusion.

For the foregoing reasons, I conclude that the classifications drawn by § 25-21,237 are not rationally related to a legitimate state interest and are thus violative of the equal protection clause of the Nebraska Constitution. Consequently, I would reverse the district court's judgment dismissing the Les' theories of recovery based on simple negligence and remand the cause for a new trial as to those issues.

HENDRY, C.J., and McCORMACK, J., join in this dissent.

HENDRY, C.J., dissenting.

I was not a member of the court when *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998), was decided; with that exception noted, I join in Justice Gerrard's dissent.