REQUESTED BY: Senator Mick Mines
Nebraska State Legislature
 INTRODUCTION
LB 875 was enacted during the 2006 session of the Nebraska Legislature. That bill, among other things, amends Neb. Rev. Stat. § 44-3522 (2004) by adding a subsection (4) requiring that a purchaser of a motor vehicle service contract must be given a "notice of risks." Unless the motor vehicle service contract reimbursement insurance policy is issued by an insurer domiciled in Nebraska, that notice must include the following statement: "The issuer of the motor vehicle service contract reimbursement insurance policy is not a domestic entity and the Department of Insurance can give no assurance that the issuer has adequate reserves to cover potential losses." The notice of risks is also to contain a statement regarding the fact that neither the motor vehicle service contract nor the motor vehicle service contract reimbursement insurance policy are covered by the Nebraska Property and Liability Insurance Guaranty Association Act.
You are concerned that the notice language requirement referring to the possibility of inadequate reserves to cover losses quoted above may violate the equal protection clause of the Fourteenth Amendment to the United States Constitution and Nebraska's equal protection clause, Neb. Const. art. I, § 3, in that it appears to discriminate against insurers who are not domiciled in Nebraska by requiring the cautionary language concerning reserves be put in the notice only for them and not for insurers domiciled in Nebraska. You have indicated that you are contemplating introducing legislation to eliminate the "notice of risks" requirement because of this concern. You have asked for this office's "opinion as to whether this would be a prudent change to the existing statute."
As you know, this office, in performing its duties and responsibilities, might be called upon in the future to defend the statutory "notice of risks" requirement should an action be brought in court attacking its constitutionality. Therefore, we are not in a position to give any opinion as to whether or not the language of the notice, as applied to insurers that are not domiciled in Nebraska, violates constitutional equal protection provisions, and we do not do so. We will, however, provide an overview of the legal principles and precedents we believe would be applicable in any equal protection challenge to the "notice of risks" requirements based upon the language that is required when the issuer of the motor vehicle service contract reimbursement insurance policy is not domiciled in Nebraska; and we will offer our thoughts on a "prudent" course of action.
Presumption of Constitutionality
Initially, when analyzing whether or not a statute is unconstitutional, it is important to bear in mind that "[s]tatutes are afforded a presumption of constitutionality, and the unconstitutionality of a statute must be clearly established before it will be declared void." Gourley v. Nebraska Methodist Health System, Inc., 265 Neb. 918, 942, 663 N.W.2d 43, 68 (2003). Additionally, "[t]he party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause." Id., 265 Neb. at 945,663 N.W.2d at 70. Thus, any insurer seeking to have the notice of risks requirement declared unconstitutional as violative of equal protection will bear the burden of overcoming the presumption of constitutionality and establishing that the statute violates equal protection principles.
Equal Protection — "Strict Judicial Scrutiny" and "Rational Basis" Tests
Equal protection challenges to legislation are analyzed under two somewhat different approaches. If a "fundamental right" or "suspect classification" is involved, then the classification and differing treatment in the legislation will be subject to "strict judicial scrutiny" and will be upheld only if there is a compelling governmental interest. In such circumstances the classification and differing treatment must be narrowly tailored to meet the specific compelling interest involved. Gourley,265 Neb. at 946, 663 N.W.2d at 70. "Fundamental rights" include only those basic liberties that are explicit or implicit in the Constitution, such as free speech, the right of assembly, the right to interstate travel and freedom of religion. 16B Am. Jur. 2d Constitutional Law § 816 (2006). "Suspect classifications" are classifications based on such things as race, national origin or religion. Id., § 817.
Where a "fundamental right" or "suspect classification" is not at issue, the equal protection clause allows government to make distinctions among groups and to treat different groups differently so long as there is a "rational basis" serving a legitimate governmental purpose for such differing treatment. "In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose." Le v. Lautrup, 271 Neb. 931,936, 716 N.W.2d 713, 719 (2006). The United States Supreme Court has said: "Unless a statute provokes `strict judicial scrutiny' because it interferes with a `fundamental right' or discriminates against a `suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988).
Under the rational basis test, the Equal Protection Clause is satisfied as long as there is (1) a plausible policy reason for the classification, (2) the legislative facts on which the classification is apparently based may rationally have been considered to be true by the governmental decisionmaker, and (3) the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. . . . The rational relationship standard, as the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, is offended only if a classification rests on grounds which are wholly irrelevant to the achievement of the government's objectives. . . . When determining whether a rational basis exists for a legislative classification, courts look to see if any state of facts can be conceived to reasonably justify the disparate treatment which results.
Le, 271 Neb. at 936-37, 716 N.W.2d at 719-20.
Application of "Rational Basis" Test in These Circumstances
There is no "fundamental right" to conduct the business of insurance or to sell motor vehicle service contract reimbursement insurance policies in this state and no "fundamental right" to be free of regulation in carrying on an insurance business. Likewise, distinguishing between domiciled and non-domiciled insurers does not create a "suspect classification" as that term has been applied by the courts. Accordingly, if it is attacked under the equal protection clause, the notice of risk requirement would be measured by the rational basis test — i.e., whether or not there is a rational basis related to a legitimate state purpose for the differing treatment of insurers selling service contract reimbursement insurance policies who are not domiciled in Nebraska.
The United States Supreme Court has applied the rational basis test, rather than the "strict judicial scrutiny" test, in cases involving equal protection challenges to differing treatment of insurers not domiciled in a state. In Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580, 583 (1935), the Court set forth the proper analysis as follows:
The equal protection clause does not prohibit legislative classification and the imposition of statutory restraints on one class which are not imposed on another. But this Court has said that not every legislative discrimination between foreign and domestic corporations is permissible merely because they differ, and that with respect to some subjects of legislation the differences between them may afford no reasonable basis for imposition of a statutory restriction upon foreign corporations, not applied to domestic corporations. The ultimate test of validity is not whether foreign corporations differ from domestic, but whether the differences between them are pertinent to the subject with respect to which the classification is made. . . . If those differences have any rational relationship to the legislative command, the discrimination is not forbidden. (Citation omitted.)
In Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 875
(1985), the Court, quoting favorably from Western Southern Life Ins. Co. v. State Board of Equalization of California,451 U.S. 648 (1981), reiterated:
 We held that "[w]e consider it now established that, whatever the extent of a State's authority to exclude foreign corporations from doing business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose." (Emphasis supplied.)
Possible Arguments as to "Rational Basis"
In your letter you note the competitive disadvantage that non-domiciled insurers might suffer as a result of the notice of risks requirement regarding notice of possible inadequate reserves, and you posit some arguments that could be made to show that treating insurers not domiciled in Nebraska differently in the notice of risk requirements bears no rational relationship to a legitimate state purpose. Principally, the argument could be made that, because the Department of Insurance cannot and does not give assurance that any insurer has adequate reserves to cover potential losses, there is no rational basis for singling out insurers not domiciled in Nebraska and requiring that the warning regarding possible insufficient reserves to cover losses apply only to them. In other words, assuming that there is a legitimate governmental purpose for giving any such warning to consumers, there is no reasonable basis for giving it only when the insurer is not domiciled in this state. This is certainly a colorable argument tending to support the position that there is no rational basis for the differing treatment and, therefore, a denial of equal protection of the law.
There are, however, arguments that could be made in support of the position that there is a rational basis for the differing treatment of non-domiciled insurers in connection with the notice of risk requirement. Clearly the State has a legitimate interest in seeing that its citizens are given fair warning regarding the risks they are taking when deciding whether or not to purchase a motor vehicle service contract. Moreover, from the state's perspective, the risk of insufficient reserves to cover losses might be somewhat greater for non-domiciled insurers simply because Nebraska state insurance regulators perform less oversight over such insurers and have somewhat fewer controls over them. For example, according to the Department of Insurance, with some exceptions, Nebraska's regulators normally defer to insurance regulators in the jurisdiction where an insurer is domiciled to perform financial reviews and audits of that company. On the other hand, Nebraska's insurance regulators perform their own such financial reviews and audits of insurers domiciled in this state. Also, the Nebraska Department of Insurance has authority to approve or disapprove mergers and acquisitions of insurers domiciled in the state. Neb. Rev. Stat. §§ 44-2126 and 44-2127 (2004). The department has no such authority with regard to insurers domiciled elsewhere. Additionally, the Director of Insurance has broader authority to initiate various proceedings and enter orders against an insurer domiciled in Nebraska that is having financial difficulties than he or she has with regard to an insurer not domiciled in this state. Neb. Rev. Stat. § 44-4809(1) and (2) (2004). Based on these factors it can be argued that there is a rational basis for treating non-domiciled insurers differently in the language of the notice of risks requirement.
Ultimately, it is difficult, if not impossible, to predict how these differing arguments would "play out" and which position would prevail in the context of litigation challenging, on equal protection grounds, the notice of risks requirement. Again, however, it is important to remember that any party seeking to challenge the notice of risks requirement will have the burden of overcoming the presumption of statutory constitutionality and of establishing that there is no reasonable relationship between the notice of risks requirement concerning possible insufficient reserves of non-domiciled insurers and any legitimate state purpose.
Conclusion With Regard to Possible Changes in Existing Statute
In your letter you ask for our view as to whether removing the notice of risks requirement "would be a prudent change to the existing statute." Obviously, if one sought to eliminate any possibility that a successful challenge to the notice of risks requirement could be brought in court, then eliminating the requirement would alleviate any such concern; so, in that sense, eliminating the requirement would be "prudent."
On the other hand, if the policy of giving notice of risks to purchasers of motor vehicle service contracts is of such importance as to override whatever risk there might be of an unfavorable court ruling on the constitutionality of the statute, then it might not be the most "prudent" course to eliminate the notice of risks requirement altogether. This is so for two reasons. First, as discussed above, it is not at all certain that a court would find that the notice regarding possible inadequate reserves of non-domiciled insurers is violative of constitutional equal protection requirements. Second, even if this differing treatment of non-domiciled insurers concerning notice of possible inadequate reserves were determined to be unconstitutional, there is a good chance that that provision could be severed from the remainder of the notice of risks requirement dealing with losses not being covered by the Nebraska Property and Liability Insurance Guaranty Association Act so that the latter could remain in effect.
One other "prudent" possibility for statutory amendment to deal with your concerns comes to mind: Leave the notice of risks requirement in the law but make the notice regarding possible inadequate reserves equally applicable to all insurers, whether or not domiciled in Nebraska. The second paragraph of the notice of risks called for by the statute could be amended to read simply: "The Nebraska Department of Insurance can give no assurance that the issuer of the motor vehicle service contract reimbursement insurance policy has adequate reserves to cover potential losses;" and the last paragraph of subsection (4) of Neb. Rev. Stat. § 44-3522 would be deleted. These changes would comport with the statement in your letter that the Department of Insurance "does not give assurances that any insurer, whether foreign or domestic, has adequate reserves to meet its losses" and would result in equal treatment of all insurers, whether or not domiciled in Nebraska, eliminating any possible equal protection concerns. Purchasers, however, would still be alerted to the fact that the state regulatory agency cannot and does not assure that the insurer will have sufficient reserves to cover potential losses — something it might be beneficial for them to know.
We hope the foregoing provides you with the information you seek.
 Sincerely yours, JON BRUNING Attorney General
 Charles E. Lowe Assistant Attorney General
 Approved by: ___________________________ Attorney General
Note:(1) We are informed by the Department of Insurance that, in fact, no company domiciled in Nebraska offers motor vehicle service contract reimbursement insurance policies in this state. Therefore, the language of the notice of risks requirement does not give any competitive advantage to any insurer domiciled in Nebraska. Rather, that language might discourage some individuals from purchasing such policies altogether, thus causing the non-domiciled insurers who do offer such policies to lose some business.
Note: (2) An unconstitutional portion of a statute may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature.