275 Neb. 820
MICHELLE HUG AND HENSTOCK, INC., APPELLANTS,
v.
CITY OF OMAHA, APPELLEE.
No. S-07-324.
Supreme Court of Nebraska.
Filed May 30, 2008.
K.C. Engdahl and Karisa D. Johnson, of Engdahl Johnson, L.L.C., for appellants.
Thomas O. Mumgaard, Deputy Omaha City Attorney, and Jo A. Cavel for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Appellants Michelle Hug and Henstock, Inc. (collectively Hug), brought this action in the district court against appellee City of Omaha (City) contending that the City's ordinance prohibiting smoking[1] was unconstitutional. The district court concluded the ordinance was constitutional. We reverse, and remand with directions.

FACTS
On June 20, 2006, the Omaha City Council voted to adopt an ordinance prohibiting smoking in most public places and places of employment within its city limits. Under the ordinance, certain facilities were exempted from the operation of the ordinance until May 14, 2011.[2] Those facilities included stand-alone bars, keno establishments which applied for their license on or before June 8, 2006, and horseracing simulcasting locations. Also exempted under the ordinance are tobacco retail outlets, defined under the ordinance to include establishments that sell not only tobacco products, but also "other products that are incidental to the tobacco sales." Tobacco-only retail establishments are not regulated under the City's ordinance.
The City's ordinance indicated that its intent was
(1) to protect the public health and welfare by prohibiting smoking in public gathering places and places of employment; and (2) to guarantee the right of employees, residents, and visitors to breathe smoke free air, and to recognize that the need to breathe smoke free air shall have priority over the desire to smoke.[3]
Hug owns the Marylebone, a bar located in the City. It is undisputed the Marylebone, which provides some food service, is covered by the prohibition against smoking and is not currently eligible for any of the exemptions provided under the ordinance.
Hug filed suit against the City challenging the constitutionality of the ordinance. In particular, Hug argued that the exemptions provided under the ordinance amounted to special legislation under Neb. Const. art. III, § 18.
The district court concluded that the ordinance was constitutional and dismissed Hug's complaint. The district court noted that
[t]he classification drawn by the Ordinance is reasonably connected to the legitimate purpose of promoting the public health and is based on substantial differences between the regulated public gathering places and the temporarily exempted businesses. . . . Notwithstanding [Hug's] assertions, the Ordinance is not arbitrary simply because it does not prohibit smoking in all places immediately. There is no permanently closed class. The class goes out of existence in 2011. It is a temporary classification. [The City] has also presented evidence that it is possible that other locations can join the class, thus increasing its size.
In so finding, the district court relied upon exhibits 3 and 4, affidavits by Omaha City Council members James Suttle and Franklin Thompson detailing the reasoning behind the exemptions to the ordinance. Hug appeals.

ASSIGNMENTS OF ERROR
Hug assigns, renumbered, that the district court erred in (1) applying an equal protection standard of review rather than the special legislation standard when analyzing the ordinance under Neb. Const. art. III, § 18; (2) admitting exhibits 3 and 4 into evidence; (3) failing to find that the ordinance did not violate Neb. Const. art. III, § 18; (4) overruling Hug's motion for summary judgment; and (5) granting the City's motion for summary judgment.

STANDARD OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]
[2] The constitutionality of an ordinance presents a question of law, in which an appellate court is obligated to reach a conclusion independent of the decision reached by the trial court.[5]

ANALYSIS
Hug's primary contention on appeal is that the exemptions provided for by the ordinance are special legislation in violation of the special privileges and immunities clause of Neb. Const. art. III, § 18, and that the district court erred in finding otherwise. In connection with this, Hug also argues that the district court erred in utilizing an equal protection, rather than special legislation, standard when conducting its analysis and in admitting the affidavits of Suttle and Thompson. We note that Hug is not asking this court to find the smoking ban itself unconstitutional, but, rather, is arguing only that the exemptions to the ban are unconstitutional.
Before reaching the principal issue on appeal, however, we must address Hug's arguments that the district court utilized an incorrect standard in analyzing her contention that the exemptions were special legislation and that the district court erred in admitting into evidence exhibits 3 and 4.

Proper Standard Under Neb. Const. Art. III, § 18.
Hug first assigns that the district court incorrectly utilized an equal protection standard when conducting its analysis. Hug acknowledges that the district court, in its order, stated that it was using the special legislation standard. Hug argues, however, it was evident that the court was actually employing an equal protection standard.
Even assuming that Hug is correct that the standard actually applied by the district court was an equal protection standard and therefore incorrect, the primary issue presented by this appeal is a question of law. As a question of law, this court will conduct a de novo review of the claim that the ordinance is unconstitutional special legislation. In conducting such a review, this court will make its own independent determination as to the ordinance's constitutionality.[6] As such, the standard utilized by the district court is of no consequence to our analysis. We need not further address Hug's first assignment of error.

Admissibility of Exhibits 3 and 4.
Hug next argues that exhibits 3 and 4, Suttle's and Thompson's affidavits, are inadmissible because the ordinance itself sets forth its purposes and no other evidence is necessary, or indeed relevant, to determine that purpose. In addition, Hug notes that "[t]he affidavits . .. contained statements regarding their personal concerns and state of mind when voting to enact [the] Ordinance" and that "[e]ven though both Thompson and Suttle are members of the Omaha City Council, their statements are merely reflective of their own concerns, and are not competent statements of the City Council's purpose in enacting the Ordinance."[7]
Generally, outside of the plain language used in legislation, a legislative body's purpose or intent in enacting legislation is determined through an examination of the legislative history of a particular enactment. And this court has previously considered legislative history when determining whether particular enactments are unconstitutional as special legislation.[8] However, we conclude that the affidavits in question do not qualify as legislative history.
[3,4] Legislative history is defined as "[t]he background and events leading to the enactment of a statute, including hearings, committee reports, and floor debates."[9] We see a distinction between legislative history made contemporaneously with the passage of legislation and statements made subsequently to the passage of legislation. In discussing the latter, the U.S. Supreme Court has noted that "postenactment views `form a hazardous basis for inferring the intent' behind a statute."[10]
The record in this case clearly establishes that the ordinance was passed on June 20, 2006, but the affidavits in question were not made until early September. The affidavits were not made contemporaneously with the enactment of the ordinance, and instead are "postenactment views" referred to by the U.S. Supreme Court.
In addition to the concerns we have regarding the timing of the statements in question, we also note that, as argued by Hug, the affidavits in question reflect the viewpoints of Suttle and Thompson, and not of the entire Omaha City Council. "101ne member of a legislature which passes a law is not competent to testify regarding the intent of the legislature in passing that law.'"[11]
Because the affidavits were made subsequently to the passage of the ordinance, and because they reflect the viewpoints of just two of the seven members of the Omaha City Council, we conclude that the district court erred in receiving exhibits 3 and 4.

Is Ordinance Unconstitutional Special Legislation in Violation of Neb. Const. Art. III, § 18?
In her third assignment of error, Hug argues that the district court erred in concluding the exemptions to the City's ordinance were not unconstitutional special legislation. The enactment of special legislation is prohibited by Neb. Const. art. III, § 18, which provides in relevant part that
[t]he Legislature shall not pass local or special laws in any of the following cases, that is to say:
. . . .
Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
[5] The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants "special favors" to a specific class. A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.[12]
When the Legislature confers privileges on a class arbitrarily selected from a large number of persons standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution.[13] Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.[14]
Special legislation analysis is similar to an equal protection analysis, and often the two are discussed together because, at times, both issues can be decided on the same facts.[15] As a result, language normally applied to an equal protection analysis is sometimes used to help explain the reasoning employed under a special legislation analysis.[16] But the focus of each test is different. The analysis under a special legislation inquiry focuses on the Legislature's purpose in creating the class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation. This is different from an equal protection analysis under which the state interest in legislation is compared to the statutory means selected by the Legislature to accomplish that purpose.[17]
As noted, in this case, we are asked to determine whether the exemptions to the City's smoking ban, and not the smoking ban itself, are special legislation. In making such determination, we focus our inquiry on the City's purpose behind exempting certain entities and decide whether there is a substantial difference of circumstances between exempted and nonexempted facilities which would suggest the expediency of diverse legislation.
In determining the City's purpose in enacting the ordinance, we do not consider the reasoning set forth in exhibits 3 and 4. Instead, we focus our attention upon the purpose in the ordinance itself: the prohibition of smoking in public gathering places and in places of employment in order to protect the public health and welfare and to guarantee the right to breathe smoke-free air.
The challenged exemptions to the ordinance include standalone bars, keno establishments, horseracing simulcasting locations, and tobacco retail outlets. The stated purpose of the ordinance is to recognize the right of everyone to breathe smoke-free air in order to protect the public health and welfare. Nothing in the ordinance's stated purpose would explain why employees of the exempted facilities or members of the public who wish to patronize those establishments are not entitled to breathe smoke-free air or to have their health and welfare protected. Nor does the City offer any other admissible evidence which might support this distinction. We determine that on the record before us, there is no "substantial difference of circumstances to suggest the expediency of diverse legislation."[18] As such, we conclude that the district court erred in finding the exemptions to the ordinance were not special legislation. We do not hold that similar exemptions could not be constitutionally justifiedjust that, given the record in this instance, the exemptions in this particular case are not.
Because we conclude that the exemptions to the City's ordinance "create[] an arbitrary and unreasonable method of classification,"[19] we need not address whether the exemptions also create one or more permanently closed classes. We also consider, but reject on this record, the City's contention that it is permitted to enact its smoking ban in phases.
As an additional matter, we note that Omaha Mun. Code, ch. 12, art. VIII, § 12-172, provides:
If any provision, clause, sentence, or paragraph of this Article or the application thereof to any person or circumstances shall be held invalid, that invalidity shall not affect the other provisions of this Article which can be given effect without the invalid provision or application, and to this end the provisions of this Article are declared to be severable.
We conclude that pursuant to this section the exemptions to the ordinance set forth in Omaha Mun. Code, ch. 12, art. VIII, § 12-165.1, are severable from the remainder of the ordinance, and the remaining provisions continue to have full force and effect.
Because the district court erred in finding that the exemptions to the ordinance were not special legislation, we also conclude that the district court erred in granting the City's motion for summary judgment while denying Hug's motion.

CONCLUSION
The district court erred in admitting exhibits 3 and 4. Moreover, because there is no "substantial difference of circumstances to suggest the expediency of diverse legislation," we conclude that the exemptions set forth in the ordinance are special legislation. We therefore conclude that the district court also erred in finding the exemptions to be constitutional, and in granting the City's motion for summary judgment and denying Hug's motion. We reverse the judgment of the district court and remand the cause with directions to enter judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
CONNOLLY, J., concurring.
I concur in the majority's opinion. I write separately to emphasize that the fundamental purpose of the prohibition against special legislation is to prevent the enactment of laws bestowing economic favors on preferred groups or classes. Here, the City created exemptions bestowing economic favors on specific types of businesses: tobacco-only retail outlets, keno establishments, stand-alone bars providing limited food service, and horseracing operations.
The Constitution requires uniformity of laws:
"Uniformity [of laws] is required in order to prevent granting to any person, or class of persons, the privileges or immunities which do not belong to all persons. . . . It is because the legislative process lacks the safeguards of due process and the tradition of impartiality which restrain the courts from using their powers to dispense special favors that such constitutional prohibitions against special legislation were enacted."[1]
So, it has fallen on the courts to ensure that the citizens of this state can compete on a level playing field. In setting the boundaries of the field, we have specifically held that the "test of validity under the special legislation prohibition is more stringent than the traditional rational basis test" under the Equal Protection Clause.[2] An equal protection challenge requires a plaintiff to show that an economic classification is irrational or wholly irrelevant to the legislative objective.[3] In contrast, a special legislation challenge is satisfied if an economic classification does not bear a reasonable and substantial relation to the legislative objective.[4]
For example, this court has twice upheld legislation imposing a cap on damages a claimant can recover from health care professionals in medical malpractice actions.[5] This cap on damages was not available to other tort-feasors, but it was intended to benefit the public generallynot practitionersby making medical services more affordable. The rising cost of malpractice insurance and the resulting burden on the public created by medical practitioners passing on this cost or dropping malpractice coverage made this class of tort-feasors substantially different. And the Legislature could justifiably conclude that there were substantial reasons for protecting medical practitioners.[6]
In contrast, we have struck down an economic benefit bestowed upon a class when the benefit was not substantially tied to a legitimate public purpose. In Haman v. Marsh,[7] the Legislature authorized the Nebraska Department of Banking and Finance to guarantee deposits in industrial loan companies that had filed for bankruptcy or were in receivership. Only three companies satisfied the criteria for deposit insurance, so only depositors in those companies received the economic benefit. The legislation was enacted in response to the collapse of an industrial loan company and the resulting loss of assets by the private guaranty corporation established to insure deposits. The bill's purported purpose was to instill public confidence in the Legislature's financial institutions. We concluded, however, that the Legislature enacted the economic benefit clearly for depositors in three companies. We further decided that the economic benefit was not reasonably and substantially related to the act's stated purposeinstilling confidence in the state's financial institutions. We reasoned that payments to this class of depositors was more likely to instill fear that the state would make payments for every private injury, thereby causing the state's economic bankruptcy or economic suffocation through taxation.[8]
These cases show that for an economic benefit to a class to be upheld, three tests must be satisfied: (1) There must be a valid public purpose supporting the distinctive treatment; (2) the situation or characteristics of the class must be real and substantially different from other subjects of like general character; and (3) the distinctive treatment must bear a reasonable and substantial relation to the legitimate objectives and purposes of the legislation.[9] The essential inquiry is whether the things or persons classified by the act form by themselves a proper and legitimate class relative to the act's purpose.[10]
Here, Omaha's smoking ban ordinance does not state the City's purpose for exempting stand-alone bars, keno establishments, horseracing operations, and tobacco retail outlets. But common sense dictates that exempted businesses will receive a significant economic benefit because smokers are more likely to patronize exempt businesses over those subject to the ban. The City may have intended to protect businesses more heavily dependent upon smokers until they could create other accommodations for their customers. But such purposes cannot save the exemptions from a special legislation challenge because the City would still fail to satisfy any of the criteria for creating a valid class economic benefit.
The ordinance does not state, nor does the City argue, that protecting the revenues of the exempt businesses and horseracing operations was intended to serve a public purpose. The ordinance's only stated purposes are to protect public health and the rights of citizens to breathe smoke-free air. Nor can the City show that the exempt businesses and horseracing operations have a real and substantial difference from businesses with like general characteristics that are subject to the ban. For example, other recreation or leisure businesses such as bowling alleys are also economically burdened by smoking bans,[11] but they are not exempt from the ban. Similarly, a stand-alone bar that provides full food service is subject to the ban, while a stand-alone bar that provides only limited food service is exempt. But most important, the City cannot satisfy the essential inquiry: whether the exemption's economic benefit bears a reasonable and substantial relationship to its stated purpose of protecting public health and the rights of citizens to breathe smoke-free air.
The City's purpose was not to separate smokers and nonsmokers, nor to limit smoking in public places to designated smoking establishments. Instead, the City's ultimate goal or purpose is to ban smoking in public gathering places and places of employment, and to guarantee the right of employees, residents, and visitors to breathe smoke-free air. Under the ordinance, these businesses and horseracing operators have only a time-limited exemption. The exemption can only be explained as an economic benefit to offset the ban's financial impact for a limited class of businesses and horseracing operations. This benefit does not promote or have a substantial relation to the City's legislative purpose of protecting public health and citizens' right to breathe smoke-free air.
To sum up, the City's exemptions have sucked the air out of an otherwise constitutional ordinance.
NOTES
[1] Omaha Mun. Code, ch. 12, art. VIII, §§ 12-160 to 12-172 (2006).
[2] Id., § 12-165.1.
[3] Id., § 12-160.
[4] Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[5] Maxon v. City of Grand Island, 273 Neb. 647, 731 N.W.2d 882 (2007).
[6] See id.
[7] Brief for appellants at 22 (emphasis in original).
[8] Le v. Lautrup, 271 Neb. 931, 716 N.W.2d 713 (2006); Gourley ex rel. Gourley v. Nebraska Methodist Health Sys., 265 Neb. 918, 663 N.W.2d 43 (2003); Bergan Mercy Health Sys. v. Haven, 260 Neb. 846, 620 N.W.2d 339 (2000); Big John's Billiards v. Balka, 260 Neb. 702, 619 N.W.2d 444 (2000); Pfizer v. Lancaster Cly.. Bd. of Equal., 260 Neb. 265, 616 N.W.2d 326 (2000).
[9] Black's Law Dictionary 919 (8th ed. 2004).
[10] United States v. Monsanto, 491 U.S. 600, 610, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) (quoting United States v. Price, 361 U.S. 304, 80 S. Ct. 326, 4 L. Ed. 2d 334 (1960)). See, also, Seven Islands Land Co. v. Maine Land Use Reg., 450 A.2d 475 (Me. 1982).
[11] Picture Rocks Fire Dist. v. Pima County, 152 Ariz. 442, 444, 733 P.2d 639, 641 (Ariz. App. 1986), disapproved on other grounds, Republic Inv. Fund I v. Town of Surprise, 166 Ariz. 143, 800 P.2d 1251 (1990). See, also, O'Loughlin v. W.C.A.B., 222 Cal. App. 3d 1518, 272 Cal. Rptr. 499 (1990).
[12] Le v. Lautrup, supra note 8.
[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] Le v. Lautrup, supra note 8, 271 Neb. at 941, 716 N.W.2d at 722.
[19] Id.
[1] Gourley v. Nebraska Methodist Health Sys., 265 Neb. 918, 938, 663 N.W.2d 43, 65 (2003), quoting Haman v. Marsh, 237 Neb. 699, 467 N.W.2d 836 (1991). See, also, Cox v. State, 134 Neb. 751, 279 N.W. 482 (1938).
[2] Haman, supra note 1, 237 Neb. at 713, 467 N.W.2d 847.
[3] See, e.g., Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist., 274 Neb. 278, 739 N.W.2d 742 (2007).
[4] See Haman, supra note 1.
[5] See, Gourley, supra note 1; Prendergast v. Nelson, 199 Neb. 97, 256 N.W.2d 657 (1977).
[6] See Gourley, supra note 1.
[7] Haman, supra note 1.
[8] Id.
[9] See, Gourley, supra note 1; Haman, supra note 1.
[10] Gourley, supra note 1; Haman, supra note 1; State ex rel. Douglas v. Marsh, 207 Neb. 598, 300 N.W.2d 181 (1980).
[11] See, e.g., EIC v. Tacoma-Pierce County Health Dept., 153 Wash. 2d 657, 105 P.3d 985 (2005).