REQUESTED BY: Sen. Mike Gloor
Nebraska State Legislature
Sen. Bill Avery
Nebraska State Legislature
LB 355; Constitutionality Of Exemption To The Nebraska Clean Indoor Air Act For Cigar Bars Under Special Legislation And Vagueness Analysis.
You have both requested our opinion as to the constitutionality of LB 355, a bill to create an exemption to the Nebraska Clean Indoor Air Act for "cigar bars." Since your questions regarding LB 355 are essentially the same, we will respond to your inquiries in the same opinion.
The Nebraska Clean Indoor Air Act (the "Clean Air Act") is currently codified at Neb. Rev. Stat. §§ 71-5716 though 71-5734 (Supp. 2008). Its purpose is "to protect the public health and welfare by prohibiting smoking in public places and places of employment," and it should "liberally construed to further its purpose." Neb. Rev. Stat. § 71-5717. The Clean Air Act generally makes it unlawful for any person to smoke in a place of employment or a public place in Nebraska. It also contains exemptions for certain guestrooms and suites, for indoor areas used in connection with research studies on the health effects of smoking, and for tobacco retail outlets. Neb. Rev. Stat. § 71-5730.
LB 355, in its Final Reading form, would create an additional exemption to application of the Clean Air Act with respect to "cigar bars." The bill would amend the Nebraska Liquor Control Act so as to define "cigar bars" as establishments operated by a holder of a Class C Liquor Llicense which: 1. do not sell food, 2. in addition to selling alcohol, annually receive ten percent or more of their gross revenue from the sale of cigars and other tobacco-related products, except the sale of cigarettes, 3. have a walk-in humidor on the premises, and 4. do not permit the smoking of cigarettes.
Senator Gloor asked for our opinion as to the general "constitutionality" of LB 355, but then went on to reference art. III, § 18 of the Nebraska Constitution and unconstitutional vagueness as his specific areas of concern. Sen. Avery joined in Sen. Gloor's request, and again listed art. III, § 18 of the Nebraska Constitution as a potential constitutional infirmity with respect to LB 355.
ANALYSIS
With respect to opinion requests from state legislators, we have frequently stated in the past that a general question on the constitutionality of proposed legislation will necessarily result in a general response from this office. Op. Att'y Gen. No. 04015 (April 7, 2004); Op. Att'y Gen. No. 98040 (September 11, 1998); Op. Att'y Gen. No. 94023 (March 23, 1994). In light of that principle, we prefer to focus our response to your opinion requests in the present instance upon the specific constitutional concerns referenced in your letters rather than engaging in a general discussion of the constitutionality of LB 355. As a result, we will discuss whether, in our view, LB 355 constitutes impermissible special legislation under art. III, § 18 of the Nebraska Constitution, and whether it is unconstitutionally vague.
Special Legislation under Art. III, § 18 of the Nebraska Constitution
Article III, § 18 of the Nebraska Constitution contains the prohibition on special legislation. That section provides, as is pertinent:
 The Legislature shall not pass local or special laws in any of the following cases, that is to say:
 * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity or franchise whatever. . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
The focus of art. III, § 18 "is the prevention of legislation which arbitrarily benefits or grants `special favors' to a specific class." Gourley v. Nebraska Methodist Health System, Inc., 265 Neb. 918, 938,663 N.W.2d 43, 65 (2003). A legislative act "is general, and not special, if it operates alike on all persons of a class or on persons who are brought within the relations and circumstances provided for and if the classification so adopted by the Legislature has a basis in reason and is not purely arbitrary." Haman v. Marsh, 237 Neb. 699, 709,467 N.W.2d 836, 844-45 (1991). A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification, or (2) it creates a permanently closed class. Gourley v. Nebraska Methodist Health System, Inc., 265 Neb. 918, 663 N.W.2d 43
(2003); Bergan Mercy Health System v. Haven, 260 Neb.846, 620 N.W.2d 339
(2000); Haman v. Marsh, 237 Neb. 699, 709, 467 N.W.2d 836, 844-45
(1991).
1. Arbitrary or unreasonable method of classification.
The first part of the two-part test for special legislation requires consideration of whether the statute at issue creates an arbitrary or unreasonable method of classification. In regard to that question, the Nebraska Supreme Court has stated:
 A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to objects to be classified. Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. . . . Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act.
Gourley v. Nebraska Methodist Health System, Inc., 265 Neb. 918, 938,663 N.W.2d 43, 65 (2003) (citations omitted). In making a special legislation analysis, "all reasonable intendments must be indulged to support the constitutionality of legislative acts, including classifications adopted by the Legislature." Id. at 943,663 N.W.2d at 68. Moreover, "[i]f the Legislature had any evidence to justify its reasons for passing [an] act, then it is not special legislation if the class is based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation concerning the objects to be classified." Id. And, courts give deference to legislative factfinding, presume statutes to be constitutional, and do not second-guess the Legislature's reasoning behind passing an Act. Id. Ultimately, "the analysis under a special legislation inquiry focuses on the Legislature's purpose in creating the class and asks if there is a substantial difference of circumstances to suggest the expediency of diverse legislation." Id. at 939, 663 N.W.2d at 67.
Consequently, in the present case, we must first focus on the Legislature's purpose in creating the class of cigar bars set out in LB 355 and exempting that class of businesses from the provisions of the Clean Air Act. To do so, we will review the legislative history of that bill to date.[1]
Testimony during the committee hearings on LB 355 indicated that existent cigar bars in Nebraska have an economic impact on their communities, and that they employ individuals, purchase supplies from multiple vendors, and pay taxes. Committee Records on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 41-46 (February 9, 2009). Testimony during those same hearings also indicated that the exemption in LB 355 is needed to keep cigar bars in business. For example, one witness testified that:
 Cigarros, its employees, and vendors have suffered the immediate, drastic economic impact of not having a cigar bar exemption included in nonsmoking laws. Total revenues are substantially down, to the tune of $168,000 over a six-month period. Please, if you would, refer to the total revenue graph, in the presentation material provided to you, on the last page. The negative economic impact of the removal of the smoking exemption [in Omaha] to Cigarros is clearly represented. . . . Obvious is the consistent drop in revenues which began concurrent with the removal of the [smoking] exemption in May 2008. . . . Accordingly, our contribution to jurisdictional tax revenues has also been substantially reduced. As all of you can understand, a small business cannot sustain these types of continual losses and expect to remain in business. If the cigar bar exemption is not passed, Cigarros and businesses like it will fail in short order.
Committee Records on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 45 (February 9, 2009). Senator Lautenbaugh, the Principal Introducer of LB 355, was aware of that need for an exemption, and stated during Floor Debate on the bill that "[w]e're [currently] putting these places [cigar bars] out of business." Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 12 (April 6, 2009) (Statement of Sen. Lautenbaugh). He also stated during Committee hearings on the bill that "we're just trying [with LB 355] to save these other businesses [cigar bars] too." Committee Records on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 72 (February 9, 2009) (Statement of Senator Lautenbaugh). From such comments, other Senators concluded that Sen. Lautenbaugh was trying, through LB 355, "to keep a few businesses still in business." Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 43 (March 23, 2009) (Statement of Sen. Karpisek). That purpose coincides with the Introducer's Statement of Intent for LB 355 which provides:
The purpose of LB 355 is to provide protection for businesses currently operating in the state as "cigar bars." The bill would allow such establishments to operate outside the restrictions of the Nebraska Clean Indoor Air Act, provided they meet the requirements set forth in this bill, and recertify that they are meeting the requirements yearly when renewing their Class C liquor licenses.
Introducer's Statement of Intent for LB 355, 101st Neb. Leg., 1st Sess. (February 9, 2009). Therefore, it appears to us, from its legislative history, that LB 355 seeks to protect the businesses known as cigar bars, to prevent them from going out of business, and to preserve their economic benefits for the Nebraska communities where they are located. Whether LB 355 constitutes special legislation should be measured in light of that legislative purpose.[2]
Having determined the purpose of the exemption contained in LB 355, we must next ask under the cases cited above if there is a substantial difference of circumstances which suggests the expediency of diverse legislation in relation to that purpose. In the context of this specific case, we must ask if there is a substantial difference of circumstances between cigar bars and other entities subject to the Clean Air Act which would suggest the expediency of an exemption from that Act for cigar bars so as to keep cigar bars in business. In particular, it appears to us that, in this case, we must compare cigar bars with other bars, restaurants and recreational businesses which have a Class C Liquor License and which might gain some economic advantage from allowing smoking indoors.
The legislative history of LB 355 seems to provide evidence of differences between cigar bars and other bars, restaurants and the like which do support separate treatment for cigar bars. First of all, as noted above, there is testimony that compliance with the Clean Air Act will put cigar bars out of business. In contrast, other bars and restaurants don't seem to be similarly affected. For example, Senator Avery related the following anecdote during Floor Debate:
I have a constituent who owns several bars both here and in Lincoln and he called me to express his concern that this bill [LB 355] would require him to split his bars in two, and somehow create a cigar bar in one part and a noncigar bar in the other. This would be a great expense. He did not like the statewide smoking ban and I heard a lot about that at the time. He was one of the most vociferous opponents of the statewide smoking ban but he adapted to it. His business has flourished since then.
Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 8 (April 6, 2009) (Statement of Sen. Avery) (emphasis added). Senator Avery also indicated that "studies have shown either no effect, or no effect and or slight improvements in restaurant business and bar business with smoking bans. Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 23 (March 24, 2009) (Statement of Sen. Avery).
In addition, cigar bars are in the business of selling smoking itself rather than simply allowing smoking as an incident to the sale of alcohol, food or other recreational activities. As noted by Senator Laughtenbaugh:
 I would submit to you that cigar bars are different than any other entity that was affected by the smoking ban in that they exist for smoking. I don't believe that restaurants can make that claim. These entities [cigar bars] are for the purpose of smoking; much like smoke shops, but somehow they were not part of the exemption.
Committee Records on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 35 (February 9, 2009) (Statement of Senator Laughtenbaugh). And, those comments by Sen. Laughtenbaugh raise another demarcation between cigar bars and other entities affected by the statewide smoking ban. That is, individuals who purchase cigars in cigar bars likely may find it advantageous to smoke a certain cigar to determine if they want to purchase others like it. That is not the case with smoking in other bars and restaurants. Indeed, the need to try a product before purchasing it formed part of the basis for the current exemption in the Clean Air Act for tobacco retail outlets. Floor Debate on LB 395, 100th Neb. Leg. 1st Sess. 4-5 (February 13, 2007) (Statement of Sen. Johnson).
In sum, it appears to us that the purpose of LB 355 is to protect cigar bars and to keep them from going out of business, thereby preventing an adverse economic impact upon the communities where they are located. It also appears to us that cigar bars are substantially different from other bars, restaurants and similar entities because they will be forced out of business without an exemption to the smoking ban, because they are primarily in the business of selling smoking itself and not food, alcohol, etc., and finally, because individuals purchasing their products need to sample those products on occasion prior to purchase. Those various differences suggest that it is expedient to create diverse legislation to exempt cigar bars from the statewide smoking ban in order to carry out the purpose of LB 355.[3]
We are aware of Hug v.City of Omaha, 275 Neb. 820, 749 N.W.2d 884
(2008). In that case, the Nebraska Supreme Court held that certain exemptions to a city ordinance passed by the City of Omaha which prohibited smoking in most public places or places of employment within the city constituted special legislation in contravention of art. III. § 18 of the Nebraska Constitution. However, we believe that the Hug case is distinguishable from the present circumstances.
In Hug, the court considered the constitutionality of the smoking ban exemptions at issue under the same test as set out above, i.e., the court looked at the purpose of the exemptions and determined if there was a substantial difference of circumstances between the exempted and nonexempted facilities which would suggest the expediency of diverse legislation. However, because of evidentiary issues, the only record which the court had before it to determine the purpose of the exemptions at issue was the record stating the purpose of the non-smoking ordinance itself. In other words, the court had nothing before it which set out the purpose of the exemptions. On that record, the court found that there were no substantial differences of circumstances to suggest the expediency of diverse legislation exempting certain business entities from the smoking ban when the purpose of the ban was to protect the public health and welfare and guarantee the right to breathe smoke-free air. In doing so, the court specifically stated "[w]e do not hold that similar exemptions could not be constitutionally justified — just that, given the record in this instance, the exemptions in this particular case are not." Hug at 827, 749 N.W.2d at 891.
As is discussed at length above, there is ample evidence in the legislative history in the present case which establishes the legislative purpose underlying the exemptions set out in LB 355, and that purpose is different that the purposes underlying the Clean Air Act. Therefore, Hug does not require a determination that the exemptions in LB 355 constitute improper special legislation.
We also recognize that the concurrence in Hug, authored by Justice Connolly, sets out a somewhat more stringent standard for application of the special legislation prohibition in the context of legislation which bestows economic favors. Hug at 830, 831, 749 N.W.2d at 893. Nevertheless, it seems to us that LB 355 satisfies that more demanding three-part test: 1. there is a valid public purpose supporting the exemptions in LB 355 — to prevent cigar bars from going out of business, 2. as discussed above, there appear to be real and substantial differences between cigar bars and other bars, restaurants and entities subject to the Clean Air Act, and 3. the classifications created by LB 355 seem to form a proper and legitimate class relative to the act's purpose.
2. Permanently Closed Class.
A determination as to whether a particular statute constitutes special legislation also requires consideration of whether that statute creates a permanently closed class. In considering whether a class established by legislation is closed, the courts are not limited to the face of the legislation, but may consider the act's application. Haman v. Marsh,237 Neb. 699, 467 N.W.2d 836 (1991). In such a consideration, courts must consider the actual probability that others will come under the act's operation. Id. If the prospect that others may come under the act's operation is merely theoretical, and not probable, the act is special legislation. Id. The conditions of entry into the class must not only be possible, but reasonably probable of attainment. Id.
There is nothing on the face of LB 355 which would prevent the establishment of new cigar bars or which closes the class of cigar bars created by that bill. We understand that courts may look behind the face of the legislation as noted above. However, we believe the prospect that other cigar bars may be established in Nebraska is not merely theoretical, but reasonably probable of attainment. In fact, the bill's Introducer took that prospect into account, as is illustrated by the following exchange from the Floor Debate:
 SENATOR GAY: . . . So what would prevent them from putting in walk-in humidor on (sic) and all of a sudden we got more bars popping up. Your 10 is now 100. I mean, I don't know, it's a big state. There's . . . what's to prevent someone from doing that?
 SENATOR LAUTENBAUGH: Well, honestly, the short answer is there's nothing that's an absolute prevention, that's the point. This is not supposed to be a closed class because then you get into constitutionality issues.
Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 3-4 (March 24, 2009). The exemption from the Clean Air Act contained in LB 355 was designed to be narrow, and the number of the cigar bars in Nebraska is likely limited by the requirements for establishing such a business. However, we do not believe that LB 355 creates a permanently closed class.
For all the reasons discussed at length above, it does not appear to us that LB 355 creates an arbitrary and unreasonable method of classification or a permanently closed class. As a result, we cannot say that LB 355 constitutes special legislation in violation of art. III, § 18 of the Nebraska Constitution.
Unconstitutional Vagueness
Apart from issues involving special legislation, Senator Gloor also requested our "opinion regarding whether the definition of `cigar bar' created within the bill is so vague as to be unconstitutional."
We have discussed the vagueness doctrine in previous opinions, and we will quote from one such opinion at length. In our Op. Atty Gen. No. 07012 (May 29, 2007), we stated:
 The void for vagueness doctrine, which involves issues of substantive due process, is based on the due process requirements contained in the Fifth and Fourteenth Amendments to the United States Constitution. U.S. v. Articles of Drug, 825 F.2d 1238 (8th Cir. 1987). Similar requirements are contained in art I, § 3 of the Nebraska Constitution. In order to pass constitutional muster with respect to vagueness, a statute must be sufficiently specific so that persons of ordinary intelligence do not have to guess at its meaning, and the statute must contain ascertainable standards by which it may be applied. Id. The void for vagueness doctrine applies to both criminal and civil statutes. Id. However, greater vagueness is tolerated in civil statutes than in criminal statutes. Id. In the context of civil statutes, the United States Supreme Court has indicated that a statute will not be deemed to be impermissibly vague unless it is so "vague and indefinite as to really be no rule or standard at all." Boutilier v. Immigration Service, 387 U.S. 118, 123 (1967). The Nebraska Supreme Court has also indicated that a civil statute which is otherwise valid will not be held void for vagueness unless it is so deficient in its terms as to render it impossible to enforce. Neeman v. Nebraska Natural Resources Comm'n, 191 Neb. 672, 217 N.W.2d 166
(1974). In State ex rel. Douglas v. Herrington, 206 Neb. 516, 294 N.W.2d 330 (1980), the court said that the established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.
Op. Att'y Gen. No. 07012 at 3 (May 29, 2007).
The Final Reading version of LB 355 sets out the following definition of "cigar bar:"
Cigar bar means an establishment operated by a holder of a Class C liquor license which:
 (a) Does not sell food;
 (b) In addition to selling alcohol, annually receives ten percent or more of its gross revenue from the sale of cigars and other tobacco products and tobacco-related products, except from the sale of cigarettes as defined in section 69-2702. A cigar bar shall not discount alcohol if sold in combination with cigars or other tobacco products and tobacco-related products;
 (c) Has a walk-in humidor on the premises; and
 (d) Does not permit the smoking of cigarettes.
Upon review, it appears to us that the definition of "cigar bar" contained in LB 355 is far from being so vague and indefinite as to really be no rule or standard at all. Nor does it forbid or require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. Instead, we believe that it is sufficiently specific so that persons of ordinary intelligence do not have to guess at its meaning, and that it contains ascertainable standards by which it may be applied. On that basis, we must conclude that that definition of "cigar bar" contained in LB 355 is not unconstitutionally vague.
CONCLUSION
Your opinion requests regarding LB 355 focused on your concerns pertaining to special legislation under art. III, § 18 of the Nebraska Constitution and unconstitutional vagueness. Based upon the lengthy discussion above, we do not believe that LB 355 contravenes either of those constitutional principles.
Sincerely,
JON BRUNING Attorney General
Dale A. Comer Assistant Attorney General
Approved by:
________________________ Attorney General
[1] Outside of the plain language of a statute, a legislative body's purpose in enacting legislation can be determined by examining the legislative history of the enactment. The Nebraska Supreme Court has previously considered such legislative history when determining whether particular enactments are unconstitutional as special legislation. Hug v. City of Omaha, 275 Neb. 820, 749 N.W.2d 884 (2008); Le v. Lautrup,271 Neb. 931, 716 N.W.2d 713 (2006).
[2] We understand that the purpose of the Clean Air Act is to protect the public health and welfare by prohibiting smoking in public places and places of employment. However, LB 355 is a separate bill which creates an exemption to the Act, and we believe its propriety as special legislation should be determined by its purpose, and not the more general purpose of the Clean Air Act.
[3] It is interesting to note that the narrowness of the exemption created by LB 355 may actually comport with the original and broader purpose of the Clean Air Act. As Senator Wightman stated during Floor Debate on the bill:
 . . . if we limited it [the exemption in LB 355] that much [to five or six cigar bars] then it appears to me that anybody who's going to work in this cigar bar probably has an option to work somewhere else. There are hundreds of other bars, if not thousands of other bars across the state of Nebraska. And if they want to work in any bar that does not qualify as a cigar bar they're free to work there. So I think that it does narrow the exception such that we have still have kept intact the original purpose of the bill, which is to create smoke-free workplaces.
Floor Debate on LB 355, Rough Draft, 101st Neb. Leg. 1st Sess. 26-27 (March 23, 2009) (Statement of Sen. Wightman).